# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### CENTRAL DIVISION

| | | |
|---|---|---|
| J.C., a minor, by his parent and Next Friend, H.C.; and K.J., a minor, by his parent and Next Friend, A.J., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 2:23-CV-04216-MDH |
| THE CURATORS OF THE UNIVERSITY OF MISSOURI, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT THE CURATORS OF THE UNIVERSITY OF MISSOURI'S**
**SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

Derek Teeter     MO #59031
Michael T. Raupp     MO #65121
Claire E. Hawley     MO #73748

**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: 816-983-8000
Fax: 816-983-8080
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com
claire.hawley@huschblackwell.com

*Attorneys for Defendant*
*Curators of the University of Missouri*

# TABLE OF CONTENTS

**PAGE**

STATEMENT OF FACTS ........................................................................................... 1

LEGAL STANDARD ............................................................................................... 3

ARGUMENT ......................................................................................................... 4

I.      The University Has Eleventh Amendment Immunity From This Suit. ............................. 4

         A.      Congress did not pass § 1557 under the Fourteenth Amendment. ......................... 4

         B.      Missouri did not waive its Eleventh Amendment immunity. ................................ 5

                 1.      Receipt of federal funds does not waive the University's Eleventh Amendment immunity for claims under § 1557. ......................................... 5

                 2.      The Civil Rights Remedies Equalization Act, which predates the ACA, does not waive the University's Eleventh Amendment immunity...................... 6

II.      Plaintiffs Fail to State a Claim for Disability Discrimination Under the ACA. ............... 11

         A.      Gender identity disorder is not a disability under the ACA.................................. 11

         B.      The Complaint contains no allegations suggesting the University acted with motive or intent to discriminate based on disability. ......................................... 12

III.      Plaintiffs Fail To State A Claim For Discrimination On The Basis Of Sex. .................... 14

         A.      The Complaint contains no allegations suggesting that the University acted with motive or intent to discriminate based on gender. ................................................. 14

         B.      The *Rutledge* panel opinion is distinguishable from the present case, and it incorrectly applied the law..................................................................................... 16

CONCLUSION ........................................................................................................ 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.W. v. Jersey City Pub., Schs.*,
341 F.3d 234 (3d Cir. 2003) ................................................................. 7

*Amir v. St. Louis Univ.*,
184 F.3d 1017 (8th Cir. 1999) ............................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 3, 4

*Atascadero State Hosp. v. Scanlon*,
473 U.S. 234 (1985) ........................................................................ 5, 6

*Brandt ex rel. Brandt v. Rutledge*,
47 F.4th 661 (8th Cir. 2022) .............................................................. 17

*Brandt v. Rutledge*,
2023 WL 4073727 (E.D. Ark. 2023) ................................................... 17

*Briscoe v. Health Care Serv. Corp.*,
281 F. Supp. 3d 725 (N.D. Ill. 2017) .................................................. 16

*C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*,
536 F. Supp. 3d 791 (W.D. Wash. 2021) ............................................ 15

*Condry v. UnitedHealth Grp., Inc.*,
2018 WL 3203046 (N.D. Cal. 2018) ................................................... 15

*Cronen v. Tex. Dep't of Human Servs.*,
977 F.2d 934 (5th Cir. 1992) ............................................................... 9

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022) ............................................................................ 4

*Diamond v. Allen*,
2014 WL 6461730 (M.D. Ga. 2014) .................................................... 11

*Doe v. Univ. of Colo.*,
255 F. Supp. 3d 1064 (D. Colo. 2017) ................................................ 15

*Duncan v. Jack Henry & Assocs., Inc.*,
617 F. Supp. 3d 1011 (W.D. Mo. 2022) ......................................... 11, 12

Case 2:23-cv-04216-MDH   Document 15   Filed 01/04/24   Page 3 of 26

*Eknes-Tucker v. Governor of Ala.*,
    80 F.4th 1205 (11th Cir. 2023) ............................................................ 18

*Fryberger v. Univ. of Ark.*,
    889 F.3d 471 (8th Cir. 2018) .............................................................. 7

*Gulley-Fernandez v. Wis. Dep't of Corrs.*,
    2015 WL 7777997 (E.D. Wis. 2015) ................................................ 11

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ........................................................................... 15

*Kadel v. N.C. State Health Plan*,
    12 F.4th 422 (4th Cir. 2021) .............................................................. 9

*King v. United States*,
    3 F.4th 996 (8th Cir. 2021) ............................................................. 8-9

*Klaneski v. Bristol Hosp., Inc.*,
    2023 WL 4304925 (D. Conn. 2023) ................................................. 16

*L.W. ex rel. Williams v. Skrmetti*,
    73 F.4th 408 (6th Cir. 2023) ............................................................ 18

*Levy v. Kan. Dep't of Soc. and Rehab. Servs.*,
    789 F.3d 1164 (10th Cir. 2015) ................................................... 6, 7, 8

*Lors v. Dean*,
    746 F.3d 857 (8th Cir. 2014) ............................................................. 3

*Melton v. Oklahoma ex rel. Univ. of, Okla.*,
    532 F. Supp. 3d 1080 (W.D. Okla. 2021) ......................................... 8

*Michaels v. Akal Sec., Inc.*,
    2010 WL 2573988 (D. Colo. 2010) ................................................. 11

*Mitchell v. Wall*,
    2015 WL 10936775 (W.D. Wis. 2015) ............................................ 11

*Nat'l Fed. of Indep. Business v. Sebelius*,
    567 U.S. 519 (2012) ..................................................................... 10, 11

*Pac. Shores Props., LLC v. City of Newport Beach*,
    730 F.3d 1142 (9th Cir. 2013) .......................................................... 13

*Parker v. Strawser Constr., Inc.*,
    307 F. Supp. 3d 744 (S.D. Ohio 2018) ............................................ 11

Case 2:23-cv-04216-MDH   Document 15   Filed 01/04/24   Page 4 of 26

*Peebles v. Potter*,
354 F.3d 761 (8th Cir. 2004) ............................................................. 13

*Phillips v. Univ. of Mo.*,
2023 WL 8037921 (W.D. Mo. 2023) ..................................................... 4

*Retro Television Network, Inc. v. Luken Commc'ns, LLC*,
696 F.3d 766 (8th Cir. 2012) ............................................................ 3-4

*Rumble v. Fairview Health Services*,
2015 WL 1197415 (D. Minn. 2015) ................................................. 15-16

*Sanzone v. Mercy Health*,
954 F.3d 1031 (8th Cir. 2020) .......................................................... 12

*Scherer v. Curators of Univ. of Mo.*,
49 F. App'x 658 (8th Cir. 2002) .......................................................... 4

*Schmitt v. Kaiser Found. Health Plan of Washington*,
965 F.3d 945 (9th Cir. 2020) ............................................... 13, 14, 15

*Schwake v. Ariz. Bd. of Regents*,
967 F.3d 940 (9th Cir. 2020) ............................................................ 15

*Seminole Tribe of Fla. v. Fla.*,
517 U.S. 44 (1996) ........................................................................... 4

*Sossamon v. Texas*,
563 U.S. 277 (2011) ................................................................. passim

*Tovar v. Essentia Health*,
342 F. Supp. 3d 947 (D. Minn. 2018) ............................................ 12-13

*Tsuruta v. Augustana Univ.*,
2015 WL 5838602 (D.S.D. 2015) ..................................................... 15

*Weinreb v. Xerox Bus. Servs.*,
2020 WL 4288376 (S.D.N.Y. 2020) ................................................... 15

*Wheeler v. St. Louis Sw. Ry. Co.*,
90 F.3d 327 (8th Cir. 1996) ............................................................... 3

## **Statutes**

29 U.S.C. § 705(20)(B) .................................................................... 11

29 U.S.C. § 705(20)(F)(i) ................................................................. 11

29 U.S.C. § 794 .............................................................................. 13

v

42 U.S.C. § 12102(1) ................................................................................... 11

42 U.S.C. § 12211(b)(1) .......................................................................... 11, 12

42 U.S.C. § 18116 ...................................................................................... 4

42 U.S.C. § 18116(a) .......................................................................... 5, 9, 11

42 U.S.C. § 2000d-7 .................................................................................. 6

42 U.S.C. § 2000d-7(a) .............................................................................. 8

Pub. L. No. 110-325, 122 Stat. 3553 (2008) ............................................ 12

RSMo § 191.1720.4 .................................................................................... 2

RSMo § 191.1720.6 .................................................................................... 2

RSMo § 191.1720.6(3) ................................................................................ 2

RSMo § 191.1720.6(4) ................................................................................ 2

**<u>Other Authorities</u>**

Missouri Senate Bill 49 ...................................................................... 1, 2, 3

## STATEMENT OF FACTS

The University is a State public entity that operates a healthcare system in the State of Missouri. Complaint ("Compl."), ¶¶ 6-7.[1] Plaintiffs are minors diagnosed with "gender dysphoria." *Id.* ¶¶ 1–2, 4. They characterize gender dysphoria as a condition in which "the incongruity between one's gender identity and assigned sex causes severe emotional distress." *Id.* ¶ 24. Plaintiffs define "gender identity" as an "individual's internal sense of being male or female (or occasionally something other than male or female)." *Id.* ¶ 4. Gender dysphoria is recognized by the American Psychiatric Association in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders ("DSM-V"). *Id.* ¶ 25.

Medical interventions for gender dysphoria include, among others, puberty-delaying medication and hormone replacement therapy ("HRT"). *Id.* ¶¶ 46, 61. Puberty-delaying medication typically involves the administration of gonadotropin-releasing hormone agonists to pause endogenous puberty. *Id.* ¶ 48. HRT typically involves the administration of testosterone or a combination of testosterone-suppression and estrogen to enhance masculinization or feminization, respectively. *Id.* ¶¶ 62–63, 67. The effects of HRT can be irreversible. *Id.* ¶ 64. While other treatments for gender dysphoria exist, this lawsuit concerns only puberty-delaying medication and HRT. *Id.* ¶ 74.

In April 2022, Plaintiff J.C. was prescribed HRT by a University physician. *Id.* ¶¶ 89, 91. In September 2022, Plaintiff K.J. was prescribed puberty-delaying medication by a University physician. *Id.* ¶¶ 110–12.

In June 2023, the Governor signed Missouri Senate Bill 49 ("SB 49") into law. *Id.* ¶ 119. SB 49 prohibits "health care providers" from "prescrib[ing] or administer[ing] cross-sex hormones

---

[1]As it must in the context of a motion under Rule 12(b)(6), the University accepts the Plaintiffs' factual allegations as true. The University reserves the right to contest such allegations in subsequent phases of the litigation.

or puberty-blocking drugs for the purpose of a gender transition for any individual under eighteen years of age." *Id.* ¶ 119 (citing § 191.1720.4 RSMo). SB 49 includes a grandfather clause, which would permit healthcare providers to continue prescribing these treatments to "any individual . . . who was prescribed or administered such hormones or drugs prior to August 28, 2023." *Id.* ¶ 120. But SB 49 also creates a private right of action for any individual prescribed cross-sex hormones or puberty-blocking drugs under the age of 18, including those who fall within the grandfather clause. *See* § 191.1720.6 RSMo. Anyone asserting this cause of action is "entitled to a rebuttable presumption that the individual was harmed if the individual is infertile following the prescription or administration of cross-sex hormones or puberty-blocking drugs and that the harm was a direct result of the hormones or drugs prescribed or administered by the health care provider." § 191.1720.6(3). The statute does not require a plaintiff to demonstrate that the provider was negligent or otherwise culpable; liability appears to stem solely from the fact of harm.

SB 49 also sets a standard of proof for this cause of action, permitting the rebuttable presumption to be overcome "only by clear and convincing evidence." *Id.* The private right of action also eliminates the damage caps found in typical medical malpractice actions, permits the recovery of economic and noneconomic damages, and also allows for punitive damages. § 191.1720.6(4). The statute confirms that these damages are "without limitation to the amount and ***no less than*** five hundred thousand dollars in the aggregate. *Id.* Further, once those uncapped damages are awarded, they are then tripled to calculate the judgment. *Id.* Finally, any judgment must include attorney fees and costs. *Id.*

Shortly after SB 49 went into effect, the University announced that it would no longer prescribe or administer puberty-delaying drugs or HRT to minors. *Id.* ¶¶ 89–97, 117–18, 123, 139.

Although Plaintiffs' Complaint alleges that the University issued a statement to the media, they neglect to include it in the Complaint and do not describe its contents.

Plaintiffs do not allege any reason or motive for the decision. *Id.* ¶ 123. Notably, they *do not* allege that the University stopped providing all other forms of treatment to minor patients with gender dysphoria, including mental health and psychiatric care related to their gender dysphoria, primary care services, etc. Nor do Plaintiffs allege that the University ceased these services (puberty-delaying drugs or HRT) to patients over the age of 18. Plaintiffs allege this was a change that applied to all minor patients, not a decision made by individual physicians. *Id.* ¶¶ 123–25.

Plaintiffs contend that the University doctors who treated them believe that Plaintiffs should continue receiving the services and the doctors would have continued providing them absent the University's decision to cease offering these services in light of SB 49. *Id.* ¶¶ 98, 117–18. Plaintiffs claim they have been unable to find another healthcare provider in Missouri who will refill their respective prescriptions for puberty-delaying medication or HRT. *Id.* ¶¶ 127, 130.

Plaintiffs filed suit on November 16, 2023.

## **LEGAL STANDARD**

Eleventh Amendment immunity is a jurisdictional matter properly addressed under Rule 12(b)(1). *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014). Dismissal under Rule 12(b)(1) is proper "when a facial attack on a complaint's alleged basis for subject matter jurisdiction shows there is no basis for jurisdiction." *Wheeler v. St. Louis Sw. Ry. Co.*, 90 F.3d 327, 329 (8th Cir. 1996).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Courts must accept a plaintiff's factual allegations as true and construe all inferences in the plaintiff's favor, but need not accept a plaintiff's legal conclusions. *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d

3

766, 768–69 (8th Cir. 2012). "[C]onclusory statements" and "naked assertion[s] devoid of further factual enhancement" do not satisfy the plausibility standard. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Plaintiffs' Complaint should be dismissed for two reasons. First, Plaintiffs' claims against the University are barred by the Eleventh Amendment. Second, Plaintiffs' Complaint fails to state a claim under the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. § 18116.

## I.     The University Has Eleventh Amendment Immunity From This Suit.

Under the Eleventh Amendment, States are generally immune from civil lawsuits filed in federal court. *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996). The University is an instrumentality of the State and is therefore entitled to Eleventh Amendment immunity. *Scherer v. Curators of Univ. of Mo.*, 49 F. App'x 658, 658-59 (8th Cir. 2002); *Phillips v. Univ. of Mo.*, 2023 WL 8037921, at *3 (W.D. Mo. 2023) (Harpool, J.) (same).

Eleventh Amendment immunity can be overcome if Congress expressly abrogates it when acting to effectuate the Fourteenth Amendment, *Seminole Tribe*, 517 U.S. at 55-56, or a state waives its Eleventh Amendment immunity, *Sossamon v. Texas*, 563 U.S. 277, 284-85 (2011). Here, Plaintiffs assert two counts under § 1557 of the ACA, codified at 42 U.S.C. § 18116. Accordingly, the questions before the Court are whether (1) Congress passed § 1557 under the Fourteenth Amendment with an intent to abrogate Eleventh Amendment immunity; and (2) the State of Missouri otherwise waived its Eleventh Amendment immunity for claims under § 1557.

### A.     Congress did not pass § 1557 under the Fourteenth Amendment.

The Supreme Court already held that the ACA was enacted pursuant to the Spending Clause, not the Fourteenth Amendment. *See Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212 (2022) (conceptualizing the ACA, including § 1557, as Spending Clause legislation). As a result, Congress did not abrogate the University's Eleventh Amendment immunity through §

4

1557. Thus, only the second question remains, and the University has Eleventh Amendment immunity unless the State of Missouri waived that immunity.

### B. Missouri did not waive its Eleventh Amendment immunity.

#### 1. Receipt of federal funds under the ACA does not waive the University's Eleventh Amendment immunity for claims under § 1557.

It is possible for a State to waive its Eleventh Amendment immunity in exchange for federal funds provided through the Spending Clause, but the test is a "stringent one," which requires the waiver to be "unequivocally expressed *in the relevant statute's text*." *Sossamon*, 563 U.S. at 284 (emphasis added). Accordingly, here, the waiver language must be found—unequivocally—***in the text*** of § 1557 itself. Indeed, a waiver may not be "implied." *Id.* Moreover, any ambiguity in statutory language must be construed in favor of immunity. *Id.* at 287-88. Thus, "where a statute is susceptible of multiple plausible interpretations, including one preserving immunity, we will not consider a State to have waived its sovereign immunity." *Id.* at 287.

Here, there is no language in the text of §1557 that unequivocally expresses an intent to waive the University's Eleventh Amendment. Section 1557 generally prohibits certain forms of discrimination in health programs or activities that receive federal financial assistance, and it provides that the enforcement mechanisms under "title vi, title ix, section 794, or such Age Discrimination Act shall apply for purposes of violations." 42 U.S.C. § 18116(a).

While this language establishes a civil cause of action for the violation of the ACA's non-discrimination provisions, a general authorization for suit in federal court does not waive Eleventh Amendment immunity. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246 (1985) (superseded by statute on other grounds). Nor is language making *some* defendants liable for a civil cause of action a clear and unequivocal expression of the State's waiver of Eleventh Amendment immunity. *Id.* (Rehabilitation Act did not waive Eleventh Amendment immunity

despite its reference that "any recipient" of funds could be liable; specific language evidencing an intent to waive the States' Eleventh Amendment immunity is required). Thus, there is no language in §1557 itself that satisfies the "stringent" test.

### 2. The Civil Rights Remedies Equalization Act, which predates the ACA, does not waive the University's Eleventh Amendment immunity.

As discussed, § 1557 references the anti-discrimination provisions of Title VI, Title IX, and the Rehabilitation Act when defining the cause of action. Presumably then, Plaintiffs may argue that Congress's purported bases for waiving Eleventh Amendment immunity for those other statutes should also apply to waive Eleventh Amendment immunity for § 1557. If Plaintiffs make that argument, the relevant statute to consider is the Civil Rights Remedies Equalization Act ("CRREA"[2]), 42 U.S.C. § 2000d-7, which purports to waive Eleventh Amendment immunity for claims under the Rehabilitation Act, Title IX, Title VI, and "the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." *Id.* § 2000d-7(a)(1). Based on that text, Plaintiffs may argue that § 1557 of the ACA is captured by CRREA's residual reference to "any other Federal statute prohibiting discrimination," and, therefore, assert that CRREA waives Eleventh Amendment immunity here. This argument is wrong.

**First**, as *Sossamon* holds, the language waiving Eleventh Amendment immunity must be "unequivocally expressed in the text of the relevant statute." *Sossamon*, 563 U.S. at 284 (internal citation omitted). Thus, "[f]or a waiver of sovereign immunity to be 'knowing and voluntary,' it cannot be hidden in another statute and only applied to [the liability statute] by implication." *Levy v. Kan. Dep't of Soc. and Rehab. Servs.*, 789 F.3d 1164, 1170 (10th Cir. 2015). Here, the "relevant statute" is § 1557 of the ACA, not CRREA. Thus, under *Sossamon*, there is no valid waiver.

---

[2]CRREA is also sometimes referred to as the Rehabilitation Act Amendments of 1986.

6

**Second**, one purpose of requiring an "unequivocal expression" of language waiving Eleventh Amendment immunity in the relevant liability statute is to ensure Congress actually intended to condition receipt of federal funds on a waiver of immunity.[3] *Levy*, 789 F.3d at 1171. CRREA was passed in 1986 in response to the Supreme Court's decision in *Atascadero State Hospital* holding that the Rehabilitation Act, as originally passed by Congress, did *not* waive Eleventh Amendment immunity. *See A.W. v. Jersey City Pub. Schs.*, 341 F.3d 234, 242 (3d Cir. 2003) (discussing history of CRREA). Thus, CRREA has been held to constitute a clear and unequivocal expression of Congressional intent to condition receipt of federal funds on a waiver of Eleventh Amendment immunity from claims under the Rehabilitation Act and the other then-existing statutes, like Title IX and Title VI, which CRREA expressly references. *See Fryberger v. Univ. of Ark.*, 889 F.3d 471, 474 (8th Cir. 2018).

But the ACA was passed in 2010, some 24 years *after* CRREA. Thus, whatever intent Congress had when it passed CRREA in 1986, it could not have had the clear intent to waive Eleventh Amendment immunity under the ACA, which had yet even to be conceived. Moreover, when Congress passed the ACA in 2010, it *did not* include in the ACA any reference to CRREA, *nor did it* amend CRREA to specifically reference the ACA, along with the Rehabilitation Act, Title IX, and Title VI. The absence of such a cross-reference, and/or update to CRREA's list of specifically enumerated statutes is significant.

As the Tenth Circuit explained in rejecting an argument that CRREA's residual clause incorporated the Americans With Disabilities Act:

> Lastly, the district court noted that the ADA was passed *after* [CRREA's] waiver provisions. Congress could have included a similar waiver provision in the ADA or added the ADA to the list of nondiscrimination statutes in [CRREA's] waiver provisions, but it did not. In the absence of clear evidence that Congress intended

---

[3] The other purpose, of course, is to ensure that the State clearly understands that by accepting funds, it is knowingly and voluntarily waiving its Eleventh Amendment immunity.

for states to waive their immunity under the ADA by accepting federal funds, we will not stretch the language in [CRREA] to conclude that [Kansas] has made a clear and voluntary waiver of its sovereign immunity.

*Levy*, 789 F.3d at 1171; *see also Melton v. Oklahoma ex rel. Univ. of Okla.*, 532 F. Supp. 3d 1080 (W.D. Okla. 2021) (applying the same reasoning to hold that the Fair Housing Act is not incorporated into CRREA's residual clause).

In short, because there is no *contemporaneous* evidence of Congressional intent when the ACA was passed to condition receipt of health care funds on a waiver of Eleventh Amendment immunity, there is no clear and unequivocal expression as required by *Sossamon*.

**Third**, even if one accepts that a law enacted *before* the ACA, that does not reference the ACA, and that is contained in an entirely different section of the U.S. Code than the ACA could ever constitute a valid waiver of Eleventh Amendment immunity for a claim under the ACA, the Court must still consider the actual language in CRREA to determine whether there is a clear and unequivocal *textual* expression of waiver. *Sossamon*, 563 U.S. at 284. To this point, CRREA's residual clause says that a State "shall not be immune under the Eleventh Amendment . . . for violation of . . . the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7(a). However, this language is susceptible to two reasonable constructions that result in immunity being preserved. And, this Court *must* adopt those constructions as opposed to one that would result in waiver. *Sossamon*, 563 U.S. at 287.

To begin, the Tenth Circuit has held that the phrase "the provisions of any other Federal statute prohibiting discrimination," refers only to statutes that solely address discrimination. *See Levy*, 789 F.3d at 1170 (rejecting argument that ADA fell into residual clause because the "ADA has a much broader focus than discrimination by recipients of federal financial assistance"). Indeed, applying the last antecedent rule of statutory construction, the phrase "prohibiting discrimination" modifies the object "Federal statute," as opposed to "provisions." *See King v.*

8

*United States*, 3 F.4th 996, 1001 (8th Cir. 2021) ("under the last-antecedent rule, a limiting clause or phrase should ordinarily be read as modifying only the noun or phrase that it immediately follows.") (cleaned up). The ACA, however, is not a statute that deals solely with discrimination. It is primarily a health care funding and health care coverage statute, that happens to contain an ancillary non-discrimination provision. Thus, CRREA does not waive Eleventh Amendment immunity for a claim under § 1557, because CRREA's residual clause only refers to statutes that are *solely* non-discrimination laws, like Title VI and Title IX.

Additionally, like the Tenth Circuit, the Fifth Circuit has construed the phrase "statute prohibiting discrimination by recipients of Federal financial assistance," as covering those statutes that deal "solely" with discrimination, but it further construed the clause as *also* limited to statutes that address only discrimination by recipients of federal financial assistance. *See Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 937 (5th Cir. 1992). While the ACA does impose a non-discrimination obligation on recipients of federal health care funds, it *also* extends the non-discrimination obligation to "any program or activity that is administered by an Executive Agency," and to "any entity established under this title (or amendments)." *See* 42 U.S.C. § 18116(a). In other words, the scope of § 1557 extends beyond mere recipients of federal financial assistance, meaning the statute does not fall within the residual clause.

The Eighth Circuit has never construed the residual clause, but the constructions given to it by the Tenth and Fifth Circuits are persuasive and constitute the majority view among circuits.[4] Because both constructions posited by the Tenth and Fifth Circuits are plausible, *Sossamon* requires this Court adopt one or both of them *even if* there is also a construction that could result in waiver. *See Sossamon*, 563 U.S. at 287.

---

[4]In *Kadel v. N.C. State Health Plan*, 12 F.4th 422 (4th Cir. 2021), a two-judge majority disagreed with the Tenth and Fifth Circuits, over a vigorous and well-reasoned dissent.

**Fourth**, and finally, § 1557 of the ACA, coupled with CRREA, cannot effectuate a valid waiver of Eleventh Amendment immunity because such a waiver would amount to unconstitutional coercion. *See Nat'l Fed. of Indep. Business v. Sebelius*, 567 U.S. 519 (2012). As *Sebelius* explains, while Congress may impose certain conditions on the grant of federal funds, the States' acceptance of the conditions must be knowing and voluntary. *Id.* at 577. However, when Congress designs a program that moves from pressure "into compulsion," a State's agreement is not voluntary, and the attempted condition is invalid. *Id.*

In *Sebelius*, the Court held that the ACA violated the Spending Clause to the extent Congress sought to tie the States' receipt and eligibility for *all* Medicaid funds to the States' acceptance of the ACA's Medicaid expansion and its various conditions. *Id.* at 580. Thus, States were faced with either accepting the ACA expansion and conditions, or foregoing all Medicaid funds, which accounted for a substantial percentage of the average State's total budget. *Id.* at 581. The Supreme Court declared such a scheme to be equivalent to a "gun to the head," and "economic dragooning," that left the States with "no real option but to acquiesce." *Id.* at 582.

Likewise, § 1557 prohibits discrimination not simply as a result of an entity receiving new funding streams under the ACA, but instead, if the entity receives *any* federal funding for "any health program or activity," which would necessarily include pre-existing Medicaid funding streams, along with others. Thus, to the extent § 1557, coupled with CRREA, would otherwise effectuate a valid waiver of Eleventh Amendment immunity, the waiver is invalid, because the States (including the State of Missouri) had no real choice but to accept it. Indeed, if Plaintiffs' presumed view is correct and § 1557 (either independently or coupled with CRREA) constitutes a waiver of Eleventh Amendment immunity, Missouri's "choice" was to either accept that waiver or forego *all federal health care funding*, not simply new ACA funds. This is even a more

egregious act of dragooning than the Supreme Court considered in *Sebelius*. Thus, § 1557, coupled

with CRREA, is unenforceable as a waiver. *See Sebelius*, 567 U.S. at 585.

## II.     Plaintiffs Fail to State a Claim for Disability Discrimination Under the ACA.

Under Rule 12(b)(6), Count II fails for two reasons. First, Plaintiffs fail to state a claim

because Congress expressly excluded gender identity disorder from the definition of disability

under the ACA. Second, even if gender identity disorder is a cognizable disability (which it is not),

Plaintiffs fail to allege that the University acted with discriminatory motive or intent.

### A.     Gender identity disorder is not a disability under the ACA.

Section 1557 of the ACA incorporates the Rehabilitation Act's prohibition on disability

discrimination. 42 U.S.C. § 18116(a).  In turn, the Rehabilitation Act incorporates the definition

of "disability" in the ADA: "(A) a physical or mental impairment that substantially limits one or

more major life activities of such individual; (B) a record of such an impairment; or (C) being

regarded as having such an impairment." 42 U.S.C. § 12102(1) (incorporated into Rehabilitation

Act by 29 U.S.C. § 705(20)(B)). The Rehabilitation Act then explicitly excludes "gender identity

disorders not resulting from physical impairments" from its definition of disability. 29 U.S.C. §

705(20)(F)(i). The ADA includes an identical exclusion.  42 U.S.C. § 12211(b)(1).

Many courts have held that gender dysphoria is not a disability because it is an excluded

gender identity disorder.[5] The Eighth Circuit itself has not addressed whether gender dysphoria is

a disability.  However, another division of this Court recently held that gender dysphoria is *not* a

disability under the ADA's identical exclusionary language. *Duncan v. Jack Henry & Assocs.,

Inc.*, 617 F. Supp. 3d 1011 (W.D. Mo. 2022). There, the court correctly explained that "what

---

[5] *See, e.g.*, *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 753–54 (S.D. Ohio 2018); *Michaels v. Akal Sec., Inc.*, 2010 WL 2573988, at *6 (D. Colo. 2010); *Gulley-Fernandez v. Wis. Dep't of Corrs.*, 2015 WL 7777997, at *2 (E.D. Wis. 2015); *Mitchell v. Wall*, 2015 WL 10936775, at *1 (W.D. Wis. 2015); *Diamond v. Allen*, 2014 WL 6461730, at *4 (M.D. Ga. 2014).

controls is the statutory interpretation of the term 'gender identity disorders' as used within § 12211(b)(1)'s exclusionary provision, a question of law rather than fact." 617 F. Supp. 3d at 1054. "As with any question of statutory interpretation, the Court must start with the statute's words and look to the 'ordinary meaning . . . at the time Congress enacted the statute.'" *Id.* (quoting *Sanzone v. Mercy Health*, 954 F.3d 1031, 1040 (8th Cir. 2020)).

The Rehabilitation Act's exclusion for gender identity disorders was adopted through amendments that took effect in 2008.  Pub. L. No. 110-325, 122 Stat. 3553 (2008). Thus, as recently as 2008, Congress's clear and express intent was to exclude gender dysphoria, except to the extent it results from a physical impairment. And when Congress enacted the ACA in 2010, Congress did *not* designate gender dysphoria, generally, as a disability, or otherwise alter the definition of disability in the Rehabilitation Act.

While Plaintiffs have gender dysphoria, they fail to allege it results from a physical impairment, as Congress's definition requires. To the contrary, Plaintiffs allege their gender dysphoria is caused by "the incongruity between one's gender identity"—which they define as an "individual's internal sense of being male or female"—"and assigned sex." Compl., ¶¶ 4, 24. Thus, the cause of their gender dysphoria is not a physical impairment. Thus, this Court must dismiss Count II because Plaintiffs are not disabled as a matter of law.

### B.  The Complaint contains no allegations suggesting the University acted with motive or intent to discriminate based on disability.

Count II also fails because Plaintiffs make no allegations that the University had motive or intent to discriminate. The Rehabilitation Act prohibits discrimination "solely by reason of" disability.[6] 29 U.S.C. § 794. Thus, to state a viable claim, Plaintiffs must allege facts indicating

---

[6]Because § 1557 incorporates the Rehabilitation Act's disability discrimination by reference, Count II must meet the Rehabilitation Act's pleading standard. The same is true with respect to Count I and Title IX. *See Tovar v. Essentia*

the University's decision to stop prescribing puberty-delaying medication and HRT to minors was made "solely by reason of" an intent to discriminate against them because of their gender dysphoria.[7] *See Peebles v. Potter*, 354 F.3d 761, 767 n.5 (8th Cir. 2004); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1029 n.5 (8th Cir. 1999) ("Rehabilitation Act claims are analyzed in a manner similar to ADA claims except that the Rehabilitation Act imposes a requirement that a person's disability serve as the *sole* impetus for a defendant's adverse action against the plaintiff.").

A healthcare provider's decision to stop offering certain treatment services is not inherently discriminatory, and can be made for non-discriminatory reasons, such as a concern that the treatment in question comes with significant legal liability. This is true even when the decision affects certain individuals differently or more significantly. "'Discriminatory laws, policies, or actions will often have negative effects (whether intended or not) on individuals who do not belong to the disfavored group,' yet 'such laws, policies, or actions are discriminatory when they are undertaken for the purpose of harming protected individuals.'" *Schmitt v. Kaiser Found. Health Plan of Washington*, 965 F.3d 945, 958 (9th Cir. 2020) (quoting *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1160 (9th Cir. 2013)).

In *Kaiser Foundation*, the Ninth Circuit held that a health insurance company's decision not to provide coverage for treatment of hearing loss other than cochlear implants failed to raise an inference of discrimination against persons with hearing-related disabilities and therefore failed to state a claim under the ACA. 965 F.3d at 945. ("It is possible that Kaiser has a reasonable, nondiscriminatory reason for its blanket exclusion of treatment for hearing loss other than cochlear

---

*Health*, 342 F. Supp. 3d 947, 952 (D. Minn. 2018) ("[A] plaintiff bringing a [§] 1557 claim must essentially plead a corresponding civil rights statute predicate.").

[7] To be clear, the University maintains that due to Congress's express legislative choices, gender dysphoria is not a cognizable disability under § 1557, as stated in Section II.A, *supra*. For purposes of Section II.B, the University assumes that gender dysphoria is a disability. Even still, Count II must fail.

implants. . . For example, it may be reasonable for Kaiser to exclude coverage of a particular hearing loss treatment that is experimental or has a high cost-to-benefit ratio.").

Here, as in *Kaiser Foundation*, Plaintiffs' factual allegations provide no inference of discriminatory intent. Plaintiffs allege the University ceased provision of puberty-delaying medication and HRT to minors. Plaintiffs do not plead that the University stopped provide puberty-delaying medication and HRT to all persons with gender dysphoria.[8] Plaintiffs do not allege that the University refuses to provide *any* services to persons with gender dysphoria; rather, their claim is premised solely on discontinuation of two specific services to minors. There are no allegations—whatsoever—about the University's intent.

Additionally, Plaintiffs fail to allege that they were subjected to any express or overt discrimination, such as a derogatory comment or a doctor's stated refusal to treat persons with gender dysphoria. Plaintiffs do not raise any concerns about the University physicians who treated them, even alleging that their treating physicians wished to continue providing the services. Thus, Plaintiffs fail to plead facts giving rise to an inference of intentional discrimination. *Kaiser Found.*, 965 F.3d at 958. As a result, Count II must be dismissed.

## III. Plaintiffs Fail To State A Claim For Discrimination On The Basis Of Sex.

Count I must be dismissed because Plaintiffs do not make any factual allegations suggesting the University acted with discriminatory motive or intent, which is a required element of a sex-based discrimination claim.

### A. The Complaint contains no allegations suggesting that the University acted with motive or intent to discriminate based on gender.

A plaintiff states a viable claim for sex discrimination under Title IX, and by extension

---

[8] Plaintiffs acknowledge that the medical guidance associated with these services "differs" depending on the patient's age and stage of development. Complaint (Dkt. 1), at ¶ 40.

14

§ 1557 of the ACA, by plausibly alleging: (1) the defendant is a healthcare program that receives federal financial assistance; (2) the plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination in the provision of healthcare services; and (3) the latter occurred on the basis of sex. *C.P. ex rel. Pritchard v. Blue Cross Blue Shield of Ill.*, 536 F. Supp. 3d 791, 796 (W.D. Wash. 2021) (citing *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 946 (9th Cir. 2020)).

Critically, "Title IX claims require evidence of intentional discrimination." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005) (Title IX "implies a private right of action to enforce its prohibition on *intentional* sex discrimination"). It is not enough for Plaintiffs to claim that individuals of a certain gender or gender identity were affected differently or more significantly by the University's decision to discontinue a particular service.[9] Plaintiffs must plead facts that, if true, raise a plausible inference that the University discontinued the services with the intent to exclude Plaintiffs because of their gender.

*Rumble v. Fairview Health Services*, 2015 WL 1197415 (D. Minn. 2015) illustrates the sort of factual allegations needed to state a viable claim. In *Rumble*, a federal district court refused to dismiss a transgender patient's allegations of sex-based discrimination in violation of the ACA brought against a doctor. The plaintiff alleged (1) the defendant's "hostile and aggressive" questions about the plaintiff's prescription hormone use and sexual history; (2) the defendant's tone; (3) the defendant's slower responses to plaintiff's needs relative to cisgender patients; (4) defendant's alleged "assaultive behavior" during a physical exam of the plaintiff's genitalia; and (5) an "insulting" medical bill from defendant for the treatment, which indicated insurance coverage was not available because "the diagnosis is inconsistent with the patient's gender." *Id.* at

---

[9]Plaintiffs may not assert Title IX discrimination claims premised upon a disparate-impact theory. *See, e.g.*, *Tsuruta v. Augustana Univ.*, 2015 WL 5838602, at *4 (D.S.D. 2015); *Weinreb v. Xerox Bus. Servs.*, 2020 WL 4288376, at *3 (S.D.N.Y. 2020); *Condry v. UnitedHealth Grp., Inc.*, 2018 WL 3203046, at *4 (N.D. Cal. 2018); *Doe v. Univ. of Colo.*, 255 F. Supp. 3d 1064, 1079 n.10 (D. Colo. 2017).

*6. The court said that all of these allegations, taken together, "sufficiently 'nudge[d]' Rumble's § 1557 claim 'across the line from conceivable to plausible,' and plausibly demonstrate[d] [defendant's] discriminatory intent." *Id.* at *18 (internal citation omitted).

If the allegations in *Rumble* were barely enough, Plaintiffs do not come close here. Plaintiffs do not allege that they were subjected to an aggressive or hostile treatment, ignored or treated less favorably, or otherwise denigrated by the University or any of its agents. Plaintiffs raise no concerns with the treatment from their doctors, admitting that their doctors are sympathetic. Plaintiffs do not complain about the care they received. In fact, they wish to continue receiving services from the University. Plaintiffs' sex-based discrimination claims hinge on a single act: the University's decision to discontinue puberty-delaying medication and HRT for minors. This is not enough, because federal courts recognize that a wide range of legitimate, non-discriminatory reasons may lead a healthcare provider to discontinue certain forms of treatment.[10]

Plaintiffs' theory—that the University discriminated against them on the basis of gender—is nothing more than a legal conclusion. It is not supported by any *factual* allegations in the Complaint. This Court should dismiss Count I.

## B. The *Rutledge* panel opinion is distinguishable from the present case, and it incorrectly applied the law.

Plaintiff may claim that the University's actions amount to gender discrimination under *Brandt ex rel. Brandt v. Rutledge*, in which a panel of the Eighth Circuit affirmed an injunction against the Arkansas SAFE Act, which not only banned physicians from providing gender-affirming care to minor patients, but also from referring patients to any other provider willing to

---

[10]*See, e.g.*, *Klaneski v. Bristol Hosp., Inc.*, 2023 WL 4304925, at *5 (D. Conn. 2023) ("The Court recognizes that a wide range of legitimate factors likely contribute to a hospital's decision to stock particular medications in its pharmacy."); *Briscoe v. Health Care Serv. Corp.*, 281 F. Supp. 3d 725, 738–39 (N.D. Ill. 2017) (dismissing a class action complaint brought by female insurance plan beneficiaries alleging a division of Blue Cross and Blue Shield of Illinois discriminated against them when it failed to create a network of providers who focus on lactation counseling separate from its general network of providers).

16

provide such care. 47 F.4th 661 (8th Cir. 2022) (panel op.).  On remand, the district court granted summary judgment to the plaintiffs and permanently enjoined enforcement of the SAFE Act. *Brandt v. Rutledge*, 2023 WL 4073727 (E.D. Ark. 2023). The State of Arkansas appealed, and the Eighth Circuit took the extraordinary step of hearing the case *en banc*, with oral argument and a decision likely in 2024.  *See Brandt v. Griffin*, No. 23-2681, Order Granting Initial Hearing En Banc (8th Cir. Oct. 6, 2023).  If the Eighth Circuit sitting *en banc* follows the majority view, *Rutledge* will actually foreclose Plaintiffs' claims here, rather than save them.

Indeed, the *Rutledge* panel decision cannot save Plaintiffs' claims from dismissal here, irrespective of what the Eighth Circuit does *en banc*, because the *Rutledge* plaintiff alleged a constitutional challenge to the state statute, wherein the plaintiff alleged that the *statute itself* discriminated on the basis of sex. In this lawsuit, Plaintiffs do not challenge SB 49 but instead allege discrimination by the University under the ACA.  Whatever the Legislature's intent in passing the underlying statute SB 49, Plaintiffs have alleged no facts suggesting the University's decision not to provide grandfathered treatment was motivated by discriminatory intent.  Thus, Plaintiffs cannot state a claim for sex discrimination, as discussed Section III, A, *supra*.

To the extent that Plaintiffs seek to rely on *Rutledge* for the proposition that failing to offer certain medications to minors for purposes of gender transition, while offering them to minors to treat other conditions, makes classifications based on sex or gender, the panel opinion is likely to soon be overruled on this point by the Eighth Circuit *en banc*.  In fact, the Sixth Circuit recently reached the opposite conclusion from the *Rutledge* panel with respect to a similar Tennessee law. *L.W. ex rel. Williams v. Skrmetti*, 73 F.4th 408 (6th Cir. 2023) (granting Tennessee's request for an emergency stay of the district court's order enjoining the law). The Sixth Circuit explained, "The Act bans gender-affirming care for minors of both sexes. The ban thus applies to all minors,

regardless of their biological birth with male or female sex organs. That prohibition does not prefer one sex to the detriment of the other." *Id.* at 419. The Eleventh Circuit adopted the Sixth Circuit's approach in *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1227 (11th Cir. 2023) ("We agree with Alabama that [the law] is best understood as a law that targets specific medical interventions for minors, and not one that classifies on the basis of any suspect characteristic . . . .").

Here, the Plaintiffs acknowledge that SB 49 prohibits health care providers from prescribing or administering cross-sex hormones and puberty blocking drugs to minors for purposes of gender transition. *See* Compl. ¶ 119. Like the laws considered by the Sixth and Eleventh Circuits, SB 49 thus makes distinctions based on medical treatment and age (under 18), rather than sex and gender. If the Eighth Circuit adopts the reasoning of the Sixth and Eleventh Circuits, then Plaintiffs' claims here will fail for the additional reason that the University's decision, rooted in the same age and medical treatment distinctions set forth in SB 49, does not classify based on sex or gender either.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs' Complaint should be dismissed.

Respectfully submitted,

/s/ Derek Teeter

Derek Teeter          MO #59031
Michael T. Raupp      MO #65121
Claire E. Hawley      MO #73748

**HUSCH BLACKWELL LLP**
4801 Main, Suite 1000
Kansas City, MO 64112
Tel: 816-983-8000
Fax: 816-983-8080
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com
claire.hawley@huschblackwell.com

*Attorneys for Defendant*
*Curators of the University of Missouri*

19

## CERTIFICATE OF SERVICE

The undersigned certifies that on the 4th day of January, 2024, a copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system which sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

/s/ Derek Teeter